UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TRAI SAMPSON,

        Petitioner,

v.                                   CAUSE NO. 3:21-CV-007 DRL-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

Trai Sampson, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 20-09-0229) in which he was found guilty of rioting. The petition is now denied.

The charge was initiated on September 21, 2020, when Indiana Department of Correction Investigator M. McGee wrote a conduct report stating as follows:

> On September 10, 2020 at 1:46 pm, Offenders being housed in the Phase 2 recreation building started a disturbance that involved blocking multiple entrances to the building with furniture while a staff member was still in the building. This prevented staff from entering or exiting the building. During the investigation Offender Sampson was identified on Digital Video Recorder (DVR) moving a pool table in front of the entrance to the recreation building, and directing/commanding others to participate. This is a violation of Indiana Department of Correction Adult Disciplinary Code A-103 Rioting which states: Encouraging, directing, commanding, coercing or signaling one or more other persons to participate in a disturbance to facility order caused by a group of two (2) or more offenders which creates a risk of injury to persons or property or participating in such a disturbance or remaining in a group where some members of the group are participating in such a disturbance.

(ECF 9-1). A confidential report was also prepared detailing the investigation into the disturbance and identifying several participants, including Mr. Sampson. (ECF 11.) The report described the manner in which inmates were identified and included still frames of Mr. Sampson from the surveillance video.

On September 25, 2020, Mr. Sampson was formally notified of the charge. (ECF 9-2.) He pleaded not guilty and requested a lay advocate, and one was appointed for him. He requested a witness statement from Officer D. Tender, who he claimed would say that he "didn't start the riot." He also requested a review of the surveillance video to show that he "was not involved" in the riot.

Before the hearing, the hearing officer reviewed the video evidence and summarized it as follows:

> I (A, Goodridge) reviewed the DVR of Offender Sampson, Trai #202472 in case MCF-20-09-0229 for rioting on 9-10-2020. When I went to review the DVR I am able to see that Offender Sampson along with multiple other offenders are grouping together in a very aggressive manor. I can see that he assist in moving the pool table to in front of the left and right door. I can then see that Offender Sampson assist in putting the table up against the door on its end. Offender Sampson then paces around the recreation building with the others involved. He ends up in the area of the basketball court.

(ECF 9-5) (scrivener's errors in original). A witness statement was also obtained from Officer Tender pursuant to Mr. Sampson's request. The officer stated: "I was in the laundry room with an offender and I think this may be him. I don't remember the names of a lot of the guys." (ECF 9-6.)

On October 2, 2020, the hearing officer held a hearing on the charge. Mr. Sampson made no statement in his defense. The hearing officer considered staff reports, the video

evidence, and the witness statement from Officer Tender, and found Mr. Sampson guilty. He was sanctioned with the loss of 180 days of earned-time credits, temporary placement in restrictive housing, and a demotion in credit-earning class. The hearing officer chose these sanctions due to the seriousness of the offense, the frequency and nature of Mr. Sampson's disciplinary infractions, and his attitude and demeanor during the hearing. (ECF 9-4.) Mr. Sampson's administrative appeals were denied. Thereafter, he filed this petition.

When prisoners lose earned-time credits in a disciplinary proceeding, the due process clause of the Fourteenth Amendment guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Sampson raises three claims in his petition: (1) prison disciplinary officers "have not been vested with the judicial authority to deprive a U.S. citizen of their liberties;" (2) "state-created rights (I.C. 11-11-5-5) protected by the 14th Amendment U.S. Const. were violated and not afforded" to him; and (3) "I.C. 11-11-5-5 and the Due Process Clause of the Indiana and U.S. Constitutions were violated" because "the I.D.O.C. has no authority in subjecting [petitioner] to involuntary servitude." (ECF 1 at 2-3.) Within claim

3

two, he asserts that he was denied the right to "speak on his own behalf," "have witnesses appear in his behalf," to be given a "written copy of findings of fact," to receive "a minimum of 24 hr. notice," to "present documentary evidence," and to receive "a fair hearing." (*Id.* at 2.)

The respondent argues that claims one and three, as well as portions of claim two, are unexhausted because Mr. Sampson did not present them in his administrative appeals. Before a petitioner can obtain federal habeas relief, he must exhaust all available state remedies, and the failure to do so constitutes a procedural default precluding relief on the merits. 28 U.S.C. § 2254(b)(1)(A); *Markham v. Clark*, 978 F.2d 993, 995-96 (7th Cir. 1992). Indiana does not provide judicial review of decisions by prison disciplinary bodies, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied if the petitioner pursues all available administrative remedies. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). Indiana offers two levels of administrative appeal. *Id.* To properly exhaust, "a legal contention must be presented to each administrative level." *Id.*; *see also Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (exhaustion under 28 U.S.C. § 2254(b)(1)(A) requires a habeas petitioner to "present both the operative facts and the legal principles that control each claim" in the state proceeding).

Here, the record shows that Mr. Sampson did not raise claims one and three in his administrative appeals. (*See* ECF 9-7.) Indeed, he acknowledges as much in his petition. (ECF 1 at 2-3.) As to the various subparts of claim two, the only issues he raised in his administrative appeals were that the hearing officer was biased against him, that he was denied the opportunity to have Officer Tinder present as a live witness, and that he was

not permitted to sign the hearing report. (ECF 9-7.) The other aspects of claim two were not included in his administrative appeals, so these claims are procedurally defaulted. He did not file a traverse addressing the respondent's procedural default argument,[1] nor can the court discern any ground for excusing his default in the record. Therefore, these claims cannot be considered on the merits.

Assuming that Mr. Sampson could overcome the procedural default of his claims, they would not entitle him to federal habeas relief. Claims one and three don't appear to contain a cognizable federal due process claim. To the extent he is relying on state law or prison rules in making these arguments, a violation of state law would not entitle him to federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow policies and procedures in prison handbook had "no bearing on his right to due process").

That leaves claim two. Under *Wolff*, Mr. Sampson was entitled to the following rights: (1) advance notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence; and (4) a written statement by the decisionmaker. To the extent he has other complaints about the hearing process encompassed within claim two, they don't state a cognizable due process claim under *Wolff*.

---

[1] Mr. Sampson's traverse was originally due May 19, 2021. He did not file a traverse by that deadline. Out of an abundance of caution, the court extended the deadline to June 28, 2021. The second deadline has now passed, and no traverse was filed.

5

As for his remaining claims, the record reflects that he received the rights afforded by *Wolff*. Regarding the notice requirement, he was given significantly more than 24 hours' advance written notice of the hearing. He was formally notified of the charge on September 25, 2020, and the hearing was held October 2, 2020. The conduct report listed the offense with which he was charged and described the factual basis of the charge—namely, his participation in a group disturbance in the recreation building on September 10, 2020 at approximately 1:46 p.m. The conduct report provided all the information he needed to mount a defense. *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003).

Mr. Sampson suggests generally that the hearing officer wasn't impartial; but prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* Due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

Notwithstanding Mr. Sampson's vague assertion of bias, there is nothing in the record to reflect that the hearing officer was involved in any way in the underlying charge. Rather, the charge was based on the prison surveillance video and an investigation conducted by other prison staff. The mere fact that the hearing officer found him guilty does not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). He has not overcome the presumption that the hearing officer was impartial.

Regarding his right to present evidence, the full panoply of rights available at a criminal trial are not applicable in the prison disciplinary context. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). An inmate has a right to request and present evidence in his defense when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564. At screening, Mr. Sampson requested a review of the video evidence, and this was completed by the hearing officer before the hearing. He also requested a witness statement from Officer Tender, and one was obtained pursuant to his request.[2] Although Officer Tender's statement suggested Mr. Sampson might have been in the laundry room during the riot, it was far from definitive. The hearing officer considered Officer Tender's statement, but chose to credit the evidence of Mr. Sampson's guilt, including still frames from the surveillance video showing him participating in a group disturbance. He doesn't outline what other evidence he wanted to present, nor has he explained how such evidence would have exculpated him from the charge. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Piggie*, 342 F.3d at 666.

He may be complaining that the video evidence and confidential investigation report were kept from him. Under the due process clause, he had a right to request

---

[2] Mr. Sampson does not expressly make this argument in his petition, but he claimed in his administrative appeal that Officer Tender should have been present at the hearing to provide live testimony. However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff*, 418 U.S. at 566. The record reflects that a written statement was obtained from Officer Tender in lieu of his attendance at the hearing because he was not scheduled to be at the prison on the day of the hearing, and because he was assigned to the COVID-positive unit of the prison during this period. (ECF 9-9.) Thus, his presence at the hearing posed logistical difficulties and created a potential health risk. The court considers these ample reasons for him to have provided a written witness statement instead of live testimony.

7

evidence in his defense, but not necessarily to review the evidence personally. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* The court has reviewed the confidential investigation report and the surveillance video, and concludes that they contain materials that, if disclosed to Mr. Sampson, could jeopardize institutional safety or reveal investigative techniques. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Based on the court's viewing, there is also nothing exculpatory in these records. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). They are appropriately kept under seal.

Regarding the written statement requirement, it is "not onerous;" and to satisfy due process, "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). The hearing report reflects what evidence the hearing officer considered in finding Mr. Sampson guilty and the reasons behind the sanctions that were imposed. Mr. Sampson complains that he did not get to sign the hearing report—presumably because he was handcuffed—but the ability to sign a hearing report is not a right afforded by *Wolff*. It is clear from the record that Mr. Sampson received a copy of the report, as he filed an administrative appeal a few days after the hearing detailing numerous flaws in the report.[3] He has not established a due process violation.

---

[3] For instance, he complained in his administrative appeal that the hearing officer checked the box showing that she considered the "statement of offender," even though she recorded him as making no comment in his defense. (ECF 9-7.) The court does not view this as necessarily contradictory, as the hearing officer may have simply considered that he offered no explanation for his actions.

8

Finally, Mr. Sampson may be challenging the sufficiency of the evidence. To satisfy due process, there only needs to be "some evidence" in the record to support the hearing officer's decision. *Hill*, 472 U.S. at 455. "This is a lenient standard, requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *See Meeks*, 81 F.3d at 721. It is not the role of this court to reweigh the evidence to make its own determination of guilt or innocence; the question is solely whether there is some evidence to support the hearing officer's decision.

Mr. Sampson was found guilty of rioting, which is defined as:

Encouraging, directing, commanding, coercing, or signaling one (1) or more other persons to participate in a disturbance to facility order caused by a group of two (2) or more offenders, or participating in such a disturbance, or remaining in a group where some members of the group are participating in such a disturbance.

(ECF 9-1.) The confidential video and still frames submitted by the respondent show Mr. Sampson among a group of inmates causing a disturbance by moving pool tables to block the doors. Mr. Sampson suggests that he "didn't start the riot," but he did not have to "start" the riot to be guilty of rioting under the disciplinary code. Rather, he was guilty of rioting if he "participat[ed]" in a disturbance or "remain[ed]" in a group of inmates that was causing a disturbance. The conduct report, confidential hearing report, and surveillance video provide some offense that Mr. Sampson committed those acts.

For these reasons, the court GRANTS the motion to maintain documents under seal (ECF 10), DENIES the petition (ECF 1), and DIRECTS the clerk to enter judgment in this case.

SO ORDERED.

July 7, 2021
*s/ Damon R. Leichty*
Judge, United States District Court